571 So.2d 603 (1990)
STATE of Louisiana
v.
Lee E. MILLER.
No. 90-K-0673.
Supreme Court of Louisiana.
December 3, 1990.
*604 William Guste, Atty. Gen., Harry F. Connick, Dist. Atty., Michele Smith, Janet Ahern, Pamela Moran, Asst. Dist. Attys., for State of La., plaintiff-applicant.
Patrick A. Talley, Sherri B. Manuel, New Orleans, for Lee E. Miller, defendant-respondent.
COLE, Justice.
Lee E. Miller, defendant herein, was accused of grabbing a twelve-year old boy and forcing the boy to accompany him to an abandoned house, where he tried unsuccessfully to rape the boy. His trial for attempted aggravated rape ended with a jury verdict of acquittal on July 22, 1986. The state then brought defendant to trial on a simple kidnapping charge, a violation of La.R.S. 14:45, and on August 18, 1986 he was convicted as charged. During the trial for simple kidnapping, the court permitted testimony about the rape attempt without informing the jury of the prior acquittal or providing any limiting instruction.
Defendant was sentenced to five years at hard labor for simple kidnapping. However, following a multiple bill hearing, defendant was adjudicated a multiple offender. His original sentence was then vacated and he was resentenced under the provisions of La.R.S. 15:529.1 to ten years at hard labor without benefit of probation or good time. On appeal, defendant's kidnapping conviction was reversed on the ground that the due process guarantee of fundamental fairness was violated by introduction of the evidence relating to the alleged rape attempt. The case was remanded for a new trial. State v. Miller, 558 So.2d 1349 (La.App. 4th Cir.1990). On application by the state, this court granted certiorari. State v. Miller, 564 So.2d 307 (La.1990). The primary issue presented is whether the defendant's prior prosecution for attempted rape constituted former jeopardy of the present simple kidnapping charge.
During the simple kidnapping trial, the state attempted to show that on March 27, 1986, the twelve-year-old boy, Tracy Hawthorne, was walking down the street when he was grabbed by defendant and accused of stealing defendant's tools. Hawthorne testified that defendant grabbed him by the waist and neck, told him to be quiet, and took him to an abandoned house three blocks away. Hawthorne further testified defendant, after making Hawthorne take off his shoes and pants, said he was going to have anal intercourse with him. However, when defendant started to remove something from his pocket, Hawthorne got away and ran to a friend's house nearby to report the incident. The friend's stepfather, Wayne Reed, testified Hawthorne showed up at the house in tears from a blow to the back of the head and stated "a man tried to take his booty."
Defendant testified Hawthorne had stolen his tools and keys, which were left in front of his house when he went back inside to turn off the stove. An eyewitness corroborated this testimony. Shortly thereafter, defendant saw the boy and either accosted him or called him back. In any case, defendant testified the boy had some of defendant's tools in his pocket or hand. Defendant asked the boy to take him to the boy's mother, and the boy led him to the homes of various relations who refused to have anything to do with the matter. To recover the tools, the boy led defendant to an abandoned house where *605 defendant was set upon by several other youths. Defendant admitted threatening to "whip [Hawthorne's] ass" and grabbing the boy by his pants, which came off with the boy's shoes when he ran away. The boy ran out of the house and defendant followed. Defendant chased the other youths through the project while Hawthorne went next door to his friend's house.
Other testimony indicated the keys, tools, and other evidence in the abandoned house were apparently removed during the day in question and then replaced by Reed and Hawthorne when the police ordered them to do so prior to taking photographs. Sometime that day, Reed and Hawthorne saw defendant get into a truck. There is no indication, however, that defendant was trying to escape. Defendant testified the driver of the truck, for whom he had been waiting when the tools were stolen, was taking him to give an estimate on a small electrical job. Later in the day, defendant voluntarily reported to the police when he heard the police were looking for him.
Defendant was subsequently charged with one count of attempted aggravated rape, R.S. 14:27, 14:42, and one count of simple kidnapping, R.S. 14:45. The counts were severed and tried separately. On July 22, 1986, on evidence substantially the same as that noted above, a jury acquitted defendant of attempted aggravated rape. On August 18, 1986, a second jury found defendant guilty of simple kidnapping.
Prior to the second trial, the defense filed a motion to quash the indictment on double jeopardy grounds. The motion was denied. At that hearing, the defense also filed a Motion to Elect, asking the court "to compel the State to elect the subsection of La.R.S. 14:45 under which it intends to prosecute." The trial court granted the motion and the state answered orally that it would proceed under the first two subsections of R.S. 14:45(A), which provide that simple kidnapping is:
(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent; or
(2) The intentional taking, enticing or decoying away, for an unlawful purpose, of any child not his own and under the age of 14 years, without the consent of its parent or the person charged with its custody ...
According to the minutes, the defense indicated it "was satisfied" with the State's answer.
The trial commenced and defendant was subsequently convicted by a six-member jury of simple kidnapping. Defendant appealed claiming, inter alia, the trial court had erred in admitting the testimony concerning the attempted aggravated rape because defendant has been acquitted of that charge. Defendant argued the admission of this evidence subjected him to double jeopardy and was both irrelevant and prejudicial, thereby depriving him of a fair and impartial trial. Defendant also claimed the state's use of the testimony to fulfill the "unlawful purpose" element of R.S. 14:45(A)(2) violated his double jeopardy rights. The Fourth Circuit reversed defendant's conviction on the ground, as above noted, that the introduction of evidence of attempted aggravated rape, without informing the jury of the prior acquittal or providing any limiting instructions, had violated defendant's due process guarantee of fundamental fairness. On the double jeopardy issue, the court found no violation because the state prosecuted defendant under two subsections of R.S. 14:45, one of which does not require a showing of an "unlawful purpose."
This Court granted certiorari to review the decision of the Fourth Circuit. We now affirm, but for reasons different than those given by the Court of Appeal. We hold that the State's use of evidence of the attempted aggravated rape to prove the "unlawful purpose" element of simple kidnapping under La.R.S. 14:45(A)(2) violated the constitutional prohibition against double jeopardy. Art. 1, § 15, La.Const. (1974).
Both the Louisiana and the United States Constitutions provide that no person shall be twice put in jeopardy of life or liberty for the same offense. U.S. Const. amend. V; La. Const. art. 1, § 15 (1974). Louisiana Code of Criminal Procedure Article 596 *606 provides that double jeopardy exists in a second trial when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
In determining whether the double jeopardy clause bars subsequent prosecution, this Court has recognized two different standards. In State v. Knowles, 392 So.2d 651 (La.1980), the court stated the two rules as follows:
[Under] the test in Blockburger v. United States, [284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)], ... [t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied is whether each provision requires proof of an additional fact which the other does not ...
* * * * * *
The "same evidence" test depends upon the proof required to convict, not the evidence actually introduced at trial. Thus, if the evidence necessary to support the second indictment would have been sufficient to support the former indictment, double jeopardy prohibits the second prosecution.

Id. at 654 (citations omitted).
Although recognizing these two separate tests, this Court, in recent years, has principally relied on the "same evidence" test when evaluating double jeopardy claims. State v. Vaughn, 431 So.2d 763 (La.1983); State v. Solomon, 379 So.2d 1078 (La. 1980); State v. Didier, 262 La. 364, 263 So.2d 322 (1972).
In this case, the state prosecuted defendant under two subsections of R.S. 14:45(A). The first subsection requires the state to prove 1) the intentional and forcible seizing and carrying 2) of any person 3) from one place to another 4) without his consent. La.R.S. 14:45(A)(1). When the elements of simple kidnapping under R.S. 14:45(A)(1) are compared to those of attempted aggravated rape (R.S. 14:27, 14:42), it is clear the prosecution under R.S. 14:45(A)(1) was not barred under either a Blockburger analysis or a "same evidence" analysis. Attempted aggravated rape, unlike simple kidnapping, requires a showing of the specific intent to engage in anal or vaginal sexual intercourse with a person who is not the spouse of the offender. Simple kidnapping, unlike attempted aggravated rape, requires proof of an intentional and forcible seizing and carrying of a person from one place to another. Additionally, the evidence necessary to convict for simple kidnapping under 14:45(A)(1) would not support a conviction of attempted aggravated rape. Under the facts of this case, the evidential focus, for purposes of a simple kidnapping charge under 14:45(A)(1), is on defendant's conduct prior to the time he got the victim into the abandoned house. The evidential focus for the attempted aggravated rape charge, on the other hand, is on defendant's conduct after he got the victim into the abandoned house.
However, the fact the state also prosecuted its case under R.S. 14:45(A)(2) is problematic. As noted above, R.S. 14:45(A)(2) requires proof that the offender took, for an unlawful purpose, a child not his own and under the age of fourteen years, without the consent of the child's parent or guardian. An examination of the record of this case indicates the state relied on Hawthorne's and Reed's testimony concerning the alleged attempted aggravated rape to fulfill the "unlawful purpose" element of the simple kidnapping charge. Thus, the issue squarely presented is whether the state's reliance on testimony concerning the alleged attempted rape of Hawthorne to prove an essential element of a charged offense violated defendant's right not to be put in jeopardy twice for the same offense, given the previous acquittal on the attempted aggravated rape charge.
In State v. Vaughn, supra, the defendant was charged in separate bills of information with theft (R.S. 14:67) and malfeasance in office (R.S. 14:134). Each bill of information cited the unlawful and fraudulent *607 taking of $588 for allegedly fixing a DWI ticket as the sole basis of the charge. The defendant was found guilty by a sixperson jury of the theft charge and found guilty at the same trial by the judge alone of the malfeasance charge. Noting the central idea behind the "same evidence" test is one should not be punished (or put in jeopardy) twice for the same conduct, this Court found the malfeasance charge to be barred by double jeopardy. In so holding, we stated:
An overview of the record reveals that the conduct which formed the basis of the malfeasance charge was the same conduct proven during the jury trial on the theft charge. Therefore, we conclude that the same evidence was used to convict Vaughn on both charges. The conviction by the trial judge for malfeasance was for conduct forming a part of the basis of the jury conviction on the theft charge and the latter constitutes a jeopardy as to the former.
431 So.2d at 767.
In State v. Didier, supra, the defendant, a sheriff, was previously convicted of malfeasance in office under R.S. 14:134 based upon his knowledge of a robbery and theft of $19,800 and his failure to try to halt the robbery, apprehend the persons involved, or report the crime to the District Attorney. The state subsequently prosecuted the defendant for simple robbery, La.R.S. 14:65, and theft, La.R.S. 14:67. It considered defendant a principal to the simple robbery and theft based upon his concealing the preparation for and commission of the robbery-theft and his failing to report it to the prosecuting authorities. The court found the robbery and theft charges to be barred because the state was relying on the same conduct for which it prosecuted the defendant in the malfeasance in office proceedings. The court specifically noted "... an integral part and necessary element of the robbery and theft charges for which the defendant is now prosecuted is the identical conduct which constituted the malfeasance for which he was previously prosecuted and convicted." 263 So.2d at 327.
In the present case, the record indicates the state relied heavily upon the testimony concerning the alleged attempted rape to fulfill the "unlawful purpose" element of 14:45(A)(2). To show the "unlawful purpose," the state attempted to prove defendant took the victim to an abandoned house where he removed the victim's shoes and pants and stated he was going to have anal intercourse with him. By using this evidence to prove an essential element of the simple kidnapping charge, the state sought to prove precisely the same conduct it tried unsuccessfully to prove in the attempted aggravated rape trial. This evidence, if believed by the jury, would clearly support a conviction for attempted aggravated rape because it establishes both the specific intent to rape the victim and an act in furtherance of the rape. Consequently, the requirements of the "same evidence" test are met.[1]
Furthermore, in State v. Knowles, 392 So.2d 651 (La.1980), the court recognized that the double jeopardy clause encompasses the principle of collateral estoppel. As described in Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970), the principle of collateral estoppel means simply "that when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." A fact is considered "ultimate" if it is necessary to a determination of the defendant's criminal liability. R.S. 14:45(A)(2), on its face, does *608 not contain as a necessary element proof of an attempted aggravated rape. So, in this respect, attempted aggravated rape is not an issue of ultimate fact in a simple kidnapping prosecution under 14:45(A)(2). However, the record of defendant's simple kidnapping trial indicates the state relied heavily on the testimony of the attempted rape. In fact, the record strongly suggests the state was relying on the existence of an attempted aggravated rape as the sole basis for satisfying the "unlawful purpose" element of R.S. 14:45(A)(2). In this trial, therefore, the existence of an attempted aggravated rape was an issue of ultimate fact, one which was previously decided in defendant's favor. Consequently, the state's reliance on the alleged attempted rape violated the principle of collateral estoppel.
In finding collateral estoppel not to be applicable in this case, the Court of Appeal essentially relied upon the fact the state argued its case under subsections (1) and (2) of R.S. 14:45(A), and not solely upon subsection (2). As noted above, prosecution under subsection (1) of R.S. 14:45(A) does not require a showing of an "unlawful purpose." After examining the record, however, this Court cannot determine whether the jury rested its verdict solely on 14:45(A)(1). What is clear from the record is the fact that the state focused closely on the testimony concerning the alleged attempted rape. The possibility the jury based its verdict on 14:45(A)(2), using the evidence of the attempted rape to fulfill the "unlawful purpose" element of the crime, is significant. Moreover, the double jeopardy clause "protects the accused against multiple punishment for the same offense as well as a second prosecution for the same offense." State v. Coody, 448 So.2d 100, 102 (La.1984) (emphasis added). In this case, the record amply demonstrates the evidence of the alleged attempted rape was an integral part of the state's case in chief. By introducing this evidence to fulfill its burden of proving an "unlawful purpose," the state forced defendant to "run the gauntlet" again for a crime of which he was acquitted. We refuse to read the double jeopardy clause as allowing the state to circumvent its protections by adding a non-barred offense to a barred offense and prosecuting the two simultaneously. Consequently, we find defendant's right not to be put in jeopardy twice for the same offense was violated, and the case must be remanded to the trial court for a new trial under R.S. 14:45(A)(1) solely.[2]
Having decided this case must be remanded for retrial, we next address defendant's request that this Court hold the testimony concerning the alleged attempted rape to be inadmissible at the new trial. Because the new trial may be prosecuted under R.S. 14:45(A)(1) solely, the material issues at the new trial will be whether or not defendant (1) intentionally and forcibly seized Hawthorne, (2) carried him from one place to another, (3) without his consent. As noted previously, the evidential focus for purposes of these elements is on defendant's conduct prior to the time he got Hawthorne into the abandoned house. With this in mind, we fail to see how the testimony of the alleged attempted rape will be relevant to a material issue at the new trial. Consequently, if the state chooses to retry defendant under R.S. 14:45(A)(1), it will be precluded from introducing evidence of the alleged attempted rape.
In holding the testimony of the alleged attempted rape inadmisible in the new trial, we recognize that previous cases from this Court have held testimony of other crimes which constituted part of the res gestae of the charged offense to be admissible regardless of the prejudicial nature of the evidence. See, State v. Jackson, 450 So.2d 621 (La.1984). However, this case presents a unique situation which has never been addressed by this Court. Defendant herein has been acquitted of the "other crime" concerning which the state *609 seeks to introduce evidence. Considering the particular significance the law attaches to an acquittal, United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (quoting United States v. Scott, 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978)), we believe evidence of a crime of which a defendant has been acquitted should not be admissible unless the probative value of the evidence outweighs its potential for unfair prejudice. In this case, the potential for unfair prejudice is great if the testimony is allowed. Of all the crimes enumerated in our criminal code, there are few as patently offensive and reprehensible as that of the attempted rape of a juvenile. If the evidence is introduced, there is a distinct possibility the jury may lose sight of the material issues involved and convict defendant merely because they believe he attempted to rape Hawthorne. When this possibility is considered in light of the fact the alleged attempted rape is not relevant to a material issue under R.S. 14:45(A)(1), the conclusion the evidence should not be admissible in the new trial is inescapable.
To summarize, we hold the state's use of evidence of the alleged attempted rape to prove the "unlawful purpose" element of R.S. 14:45(A)(2) violated the constitutional prohibition against double jeopardy. The case is remanded for a new trial under R.S. 14:45(A)(1) solely, to be conducted in accordance with our ruling.
AMENDED AND, AS AMENDED, AFFIRMED.
DENNIS, J., concurs with reasons.
CALOGERO, C.J., concurs and assigns reasons.
WATSON, J., dissents believing there was double jeopardy under LSA-C.Cr.P. 596(2).
DENNIS, Justice, concurring.
I respectfully concur with the majority that the state's use of evidence of the alleged attempted rape for which defendant was acquitted to prove the simple kidnapping charge violates defendant's constitutional right against double jeopardy.
I agree with the majority's finding that Dowling v. United States, 493 U.S. ___, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), is inapplicable to the present case because the existence of the attempted rape was an ultimate issue in the defendant's simple kidnapping trial as the state relied solely on the alleged attempted rape to prove the "unlawful purpose" requirement of La.R.S. 14:45(A)(2). However, I write separately because I believe Dowling is inapplicable to the present case for an additional reason.
In Dowling, the United States Supreme Court held that the collateral estoppel component of the federal Double Jeopardy Clause was not violated by the admission of other crimes evidence because under Federal Rule of Evidence 404(b), as interpreted by Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the other crimes evidence is admissible if the jury can reasonably find that the act occurred and that the defendant was the actor. Dowling v. United States, 110 S.Ct. at 672. The Court then stated that an acquittal of the earlier crime only means that there was reasonable doubt as to the Dowling's participation in the earlier crime. Because the jury could reasonably find that Dowling participated in the earlier crime even if the jury in the earlier trial could not find Dowling's participation beyond a reasonable doubt, the collateral estoppel component of the Double Jeopardy Clause is inapposite. Id.
However, Louisiana's Constitutional guarantee against double jeopardy gives greater protection than its federal counterpart as that federal constitutional provision is interpreted in Dowling.
In State v. Prieur, 277 So.2d 126 (La. 1973) we established safeguards to protect the accused from the prosecutorial use of other crimes evidence. These safeguards are required by the spirit of our constitutional provisions. State v. Prieur, 277 So.2d at 130. One of these safeguards is that the prosecution must establish the defendant's participation in the other crime by clear and convincing evidence. Id. at 129. Thus, the gap which existed in Dowling *610 between whether a jury could reasonably find that the defendant participated in the other crime and whether the defendant's guilt was established beyond a reasonable doubt in the earlier criminal trial is not the proper inquiry in Louisiana. Rather, in Louisiana the focus should be on the difference between whether the prosecution established the defendant's participation in the other crime by clear and convincing evidence and whether the defendant's guilt was established beyond a reasonable doubt in the earlier criminal trial. Because of the small difference and difficulty in distinguishing the clear and convincing and reasonable doubt standards, the defendant cannot be required to relitigate his participation in the other crime.
For the assigned reasons, I believe the court of appeal erred when it relied on Dowling v. United States, supra, to allow the state to introduce evidence of the attempted rape of which the defendant had been previously acquitted.
CALOGERO, Chief Justice, concurring:
I agree with the majority's conclusion that the defendant's conviction should be reversed, and that the case should be remanded to the district court for retrial under subsection 1 of LSA-R.S. 14:45(A). I arrive at that conclusion, however, through different reasoning. Rather than finding that the prior prosecution under both subsections of the statute constituted a double jeopardy violation, I find that the introduction of evidence regarding the attempted rape, which should have been barred on double jeopardy grounds, tainted the conviction. Because it is not apparent on what basis the jury voted to convict in this case, but there is a reasonable possibility that the defendant would not have been convicted absent the barred evidence, the case must be remanded for retrial under the non-jeopardy-barred offense alone. Morris v. Mathews, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986); Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
I further note that had I concluded that a double jeopardy violation had occurred in this case, I would question whether it is appropriate for this Court to remand for retrial. Normally, a finding of double jeopardy would preclude further proceedings and mandate the discharge of the defendant.
NOTES
[1] The Court of Appeal recognized the "same evidence" test is traditionally used by this Court to analyze double jeopardy issues, but did not apply the test to the facts. Instead, the Court of Appeal relied on the recent U.S. Supreme Court opinion in Dowling v. U.S., ___ U.S. ___, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), for the proposition "that evidence of a crime of which the defendant has previously been acquitted may be introduced in the trial of that defendant on a second charge when it does not determine an ultimate issue in the second trial without violating the constitutional protection against double jeopardy." As discussed more fully in the body of this opinion, infra, the existence of an attempted rape was an ultimate issue in the simple kidnapping trial.
[2] Because we find the defendant's double jeopardy right has been violated, we need not address the Court of Appeal's ruling that the introduction of the evidence of the attempted rape was fundamentally unfair.